1  Jason Hain (State Bar No. 295721)
LAW OFFICES OF JASON HAIN
2  100 Pine Street, Suite 1250
San Francisco, California 94111
3  Telephone:  831-227-6892
Facsimile: 415-795-9692
4  jason@jasonhainlaw.com

5  *Attorney for RELATOR*
KARLA ABEA
6

**FILED**

**DEC 19 2019**

SUSAN Y. SOONG
CLERK, U.S. DISTRICT COURT
NORTH DISTRICT OF CALIFORNIA

**UNDER SEAL**



7

8              UNITED STATES DISTRICT COURT

9             NORTHERN DISTRICT OF CALIFORNIA

10  UNITED STATES ex rel. KARLA ABEA          Case No:  **CV 19 8302** JSC

11         RELATOR,

12  vs.                                       COMPLAINT FOR:

13  DEBBIE ODIYE and DOES 1 through 50,
inclusive,
14
        1. Violation of 31 U.S.C. § 3729 et seq.
        2. Fraud/Concealment
        3. Breach of Covenant of Quiet Enjoyment
        4. Unlawful Business Practices
15         Defendants.
        5. Common Count
        6. Intentional Infliction of Emotional Distress
16
        7. Negligence/Personal Injury
        8. Nuisance
17
        9. Breach of the Warranty of Habitability
        10. Violation of Civil Code § 1940.9
18
        11. Breach of Contract
        12. Violation of S.F.A.C. § 37.10B
19

20                                            **JURY TRIAL DEMANDED**

21  COMES NOW, QUI TAM RELATOR, KARLA ABEA ("RELATOR"), who states the following in her
22  complaint against Defendant DEBBIE ODIYE:

23                    **JURISDICTION AND VENUE**

24  1.      This action arises under the laws of the United States to redress violations of the Federal False

25  Claims Act, 31 U.S.C. §3729 *et seq.* ("FCA").

26  2.      Subject-matter jurisdiction is conferred by 31 U.S.C. §3732(a) and 28 U.S.C. §1331.

27  3.      The Court has personal jurisdiction over the Defendant because she is located within the

28  Northern District of California and acts as a provider of property management services and

housing within the Northern District of California. Each Defendant regularly performs duties of property managers or landlords, and accordingly, is subject to the jurisdiction of this Court.

4.      The Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over Defendant's Fraud/Concealment, Breach of Covenant of Quiet Enjoyment, Unlawful Business Practices, Common Count, Intentional Infliction of Emotional Distress, Negligence/Personal Injury, Nuisance, Breach of the Warranty of Habitability, Violation of Civil Code § 1940.9, Breach of Contract, and Violation of S.F.A.C. § 37.10B because Defendant's California Law violations and their violations of the Federal False Claims Act arise from the same transactions or occurrences. The Court also has pendant jurisdiction over Defendant's California Law violations because these violations and Defendant's violations of the Federal False Claims Act arise out of a common nucleus of operative facts.

5.      Venue lies under 28 U.S.C. § 1391(b) and 31 U.S.C. § 3732(a) because Defendant contract business within this district, the facts forming the basis of this complaint occurred within this district and the property which is the subject of this action is situated within this district.

6.      The facts and circumstances of the Defendant's violations of the Federal False Claims Act have not been publicly disclosed in a criminal, civil, or administrative hearing, nor in any congressional, administrative, or General Accounting Office or Auditor General's report, hearing, audit, or investigation, or in the news media aside from the prior False Claims Act filed by Relator against Defendant as case number 18-CV-6296-WHA which was filed under seal and only unsealed after the United States received the requisite disclosure from Relator reviewed and investigated that complaint and filed a notice of declination of its right to intervene as a Plaintiff in that case.

7.      RELATOR is the original source of the information upon which this Complaint is based, as that phrase is used in the Federal False Claims Act, and she provided disclosures of the allegations of this Complaint to the United States prior to filing.

## PARTIES

8.      Qui Tam Relator KARLA ABEA brings this action on her own behalf and on behalf of the United States of America to recover civil damages and penalties under the False Claims Act, 31 U.S.C. § 3729, *et seq.* RELATOR is a residential tenant of "upper unit", (hereinafter "Subject Premises")

located at 371 Staples Avenue, San Francisco, California (hereinafter "Subject Property") which was a single-family home that has been divided into two units which share one electricity, gas and water meter. At all times relevant to this Complaint, RELATOR was a Section 8 voucher recipient; thus, RELATOR's tenancy was subsidized by the Federal Government and subject to Department of Housing and Urban Development regulations and all applicable Federal law.

9.      RELATOR is informed and believes, and thereon alleges, that Defendant DEBBIE ODIYE has been the owner of the Subject Property at all times relevant to this action to the date of filing of this Complaint.

10.      RELATOR is informed and believes, and thereon alleges, that Defendant DOES 1-50 at all times relevant to this action, were responsible for management, maintenance and care of the Subject Property and Subject Premises, each was thus a "landlord" and was responsible in some manner for the occurrences herein alleged, and that RELATOR's damages as herein alleged were proximately caused by her.

11.      When the term "Defendant" is used herein, it shall refer to Defendant DEBBIE ODIYE.

12.      RELATOR communicated on a routine basis with Defendant and her agents concerning RELATOR's tenancy at the Subject Premises.

13.      The true names and capacities of Defendant sued herein as DOES 1 through 50, inclusive, whether individual, corporate, associate, or otherwise, are unknown to RELATOR who therefore sues such Defendant by such fictitious names.  When their true names and capacities are ascertained, RELATOR will amend this Complaint by asserting their true names and capacities herein. RELATOR is informed and believes, and thereon alleges, that each of the fictitiously named Defendant are responsible in some manner for the occurrences herein alleged, and that RELATOR's and the Government's damages as herein alleged were proximately caused by those Defendants.

14.      RELATOR is informed and believes, and thereon alleges, that in doing the things herein alleged, the Defendants, and each of them, including without limitation the DOE Defendants, were acting as the agents, employees and/or principals of their co-defendants, and were generally acting within the course and scope of their agency and employment.

15.     RELATOR is informed and believes, and thereon alleges, that at all times relevant herein, each employer of employees had advanced knowledge of the unfitness of the employee and employed them with conscious disregard of the rights or RELATOR and others and authorized and/or ratified the wrongful conduct and/or was personally guilty of oppression, fraud, or malice.

## OPERATIVE FACTS

16.     At some point prior to Relator's tenancy, the single-family home which contains the Subject Premises was illegally subdivided as the ground floor was converted into a second unit. Both units have shared the same electricity, gas and water meters.

17.     On January 11, 2016, the Subject Property was legally certified to contain two residential units. Thus, prior to January 11, 2016, since the beginning of the subject tenancy, the Subject Premises was not certified as a dwelling and was thus illegal for Defendant to let as an Illegal Unit as that term in used in California Common law (hereinafter "Illegal Unit" shall mean a dwelling in a residential property which was subdivided to contain additional dwelling units without permits or a certificate of occupancy being issued pursuant to San Francisco Building Code § 109A). Relator was not aware that the Subject Premises was an Illegal Unit from the beginning of her tenancy through January 11, 2016 until she discovered these facts in August 2018.

18.     RELATOR has continually occupied the Subject Premises from her initial occupancy on or around November, 2010 through the present. RELATOR has resided in the Subject Premises in excess of one year as a tenant.

19.     By virtue of the relationship between Defendant and Relator as lessors and lessee of the Subject Premises, Defendant had a duty to disclose that the Subject Premises was an Illegal Unit before entering into the Agreement.

20.     Defendant disclosed some facts about the Subject Premises including a description of it in an advertisement in which Defendant offered the unit for rent as if it was a legal unit being legally offered on the rental market, the Agreement, emails and text messages exchanged prior to the Agreement being signed, information filled into forms which were required by SFHA for Relator to use her voucher, and the physical appearance of the unit as it was shown to Relator before the Agreement was signed.

Disclosure of those facts, without disclosing that the Subject Premises was an Illegal Unit, made that disclosure deceptive as those disclosures were intended to cause and did cause Relator to believe that the Subject Premises was a legal unit. Thus, prior to executing the Agreement, Defendant had a duty to disclose to Relator that the Subject Premises was an Illegal Unit.

21.      Before entering into the Agreement, Defendant knew that the Subject Premises was an Illegal Unit and also knew that Relator did not know and could not have reasonably discovered that fact. Defendant intended to make use of that knowledge by intentionally failing to disclose to Relator that the Subject Premises was an Illegal Unit. Thus, prior to executing the Agreement, Defendant had a duty to disclose to Relator that the Subject Premises was an Illegal Unit.

22.      Upon entering into the Agreement and taking possession of the Subject Premises, Relator relied upon each Defendant's lack of disclosure and concealment of the fact that the Subject Premises was legally permitted as a dwelling and habitable. Relator would not have agreed to rent the Subject Premises or would not have agreed to rent the Subject Premises at the rent rate she agreed to rent it, if not for Defendant's fraudulent concealment of its uncertified and unpermitted status. Relator's reliance on Defendant's concealment of the uncertified and unpermitted status in entering into the Agreement was reasonable.

23.      Relator is informed and believe that Defendant knew or should have known that she held the duty to ensure that the Subject Premises was legally permitted and would remain habitable and failing that duty would cause the Agreement to be an illegal, void and fraudulent contract and would cause Subject Property to be operated beneath the habitability level as required by law. Nonetheless, Defendant failed to meet those duties with oppression, fraud or malice.

24.    In order for the subject tenancy to be eligible for Section 8 tenant-based housing assistance payments, RELATOR and Defendant was required to enter into an agreement concerning the basic terms of the tenancy on a form entitled Request for Tenancy Approval and submit it to the San Francisco Housing Authority (hereinafter "Housing Authority" or "SFHA"). Because SFHA records are incomplete and unclear, Relator alleges the following two paragraphs regarding the Request for Tenancy Approval in the alternative as Relator has does not have knowledge sufficient to determine which

alternative is true.

25.     The Request for Tenancy Approval provided that Defendant would be financially responsible for all electricity, gas and/or water costs resulting from the proposed tenancy, was signed by RELATOR and Defendant or her agent and received by the Housing Authority in or about October 2010.  Defendant submitted this form for approval by SFHA in an attempt to convince the U.S. to pay subsidies on those terms when Defendant knew that the actual terms of the tenancy would require Relator to pay for her own utilities.

26.     SFHA performed an inspection of the subject property and found there to be two units at the property which shared utility meters as the lower portion of the home was converted into a second dwelling unit.  Defendant submitted a Request for Tenancy Approval to SFHA which proposed that Relator should pay for all electricity, gas and/or water costs resulting from the proposed tenancy.  An SFHA employee responded to that proposal by informing Defendant that HUD regulations prevented SFHA from entering into an agreement with Defendant where multiple units at the property shared a single utility meter and where such utilities would not be paid by Defendant.  Defendant and SFHA negotiated that SFHA would offer a HAP Contract with Relator paying for all electricity, gas and/or water costs resulting from the proposed tenancy on condition that Defendant demolish the second unit at the property by rejoining all but one of its rooms with the Subject Premises with the remaining room being used exclusively by Defendant personally for nonresidential purposes.  SFHA drafted a HAP Contract based on that agreement.  Defendant signed the HAP Contract with the U.S. and understood that she would need to continue to comply with the terms of the HAP Contract and her promise to SFHA to demolish the second unit in order to be eligible to continue to receive housing assistance payments.  Defendant thereafter consummated the HAP Contract by accepting housing assistance payments from SFHA with knowledge of its terms and her promise to SFHA to demolish the second unit and repeatedly certified that Defendant was doing so each time Defendant accepted the monthly housing assistance payments.  However, Defendant never demolished the second unit at the Subject Property and instead rented it to other tenants at all times during the subject tenancy and Relator paid all PG&E and water bills at the Subject Property through July 23, 2018.

27.     In order for the subject tenancy to be eligible for Section 8 tenant-based housing assistance payments, RELATOR and Defendant was required to enter into a written lease agreement ("Agreement") which they did in October 2010.  Pursuant to the Agreement, upon executing the Agreement and taking possession of the Subject Premises, RELATOR paid Defendant $2,500 as security deposit.  The Lease provided that rent would be $2,400 per month and RELATOR would have one parking space in the garage and exclusive use of the backyard.  A true and correct copy of the Agreement is attached hereto as Exhibit A.

28.     In order to be eligible for Section 8 tenant-based housing assistance payments, Defendant was required to enter into an agreement with the Housing Authority entitled Housing Assistance Payments Contract (hereinafter "HAP Contract").  The HAP Contact provided that Defendant would be entitled to receive housing assistance payments so long as she continued providing the housing services and amenities she was obligated to provide to Relator in the Agreement and continue to abide by additional obligations stated in the HAP Contract itself. The HAP Contract takes precedence over the Agreement where the two conflict.

29.     Because Relator does not know whether first two pages of the original HAP Contract provided for Defendant or Relator to pay for utilities, Relator alleges the following six paragraphs (30 through 35) in the alternative.

30.     The HAP Contract was made in writing and fraudulently breached by Defendant as described in paragraph 26 of this complaint.  Said HAP Contract included the pages of the proposed HAP contract attached hereto as Exhibit B.

31.     The HAP Contract was made orally with the terms described in paragraph 26 of this complaint after SFHA staff explained to Defendant all the terms contained the pages of the proposed HAP contract attached hereto as Exhibit B.  Said HAP Contract was fraudulently breached as described in paragraph 26 of this complaint.

32.     SFHA drafted and Defendant signed a HAP Contract which obliged Defendant to pay for gas and electric bills and Relator to pay for water bills and included the pages attached hereto as Exhibit B.  Defendant thereafter consummated the HAP Contract by accepting housing assistance payments from

SFHA with knowledge of its terms and repeatedly certified that Defendant was doing so each time Defendant accepted the monthly housing assistance payments. However, from the inception of the tenancy, Defendant instructed Relator to put all the utility bills for the Subject Property in Relator's name and Relator did so and paid all PG&E bills at the Subject Property through September 2018 and all water bills at the Subject Property through July 23, 2018.

33.     The HAP Contract was made orally with the terms described in paragraph 32 of this complaint after SFHA staff explained to Defendant all the terms contained the pages of the proposed HAP contract attached hereto as Exhibit B. Said HAP Contract was fraudulently breached as described in paragraph 32 of this complaint.

34.     SFHA drafted a HAP Contract which obliged Defendant to pay for all utility bills for the Subject Property and included the pages attached hereto as Exhibit B. Defendant thereafter consummated the HAP Contract by accepting housing assistance payments from SFHA with knowledge of its terms and repeatedly certified that Defendant was doing so each time Defendant accepted the monthly housing assistance payments. However, from the inception of the tenancy, Defendant instructed Relator to put all the utility bills for the Subject Property in Relator's name and Relator did so and paid all PG&E bills at the Subject Property through September 2018 and all water bills at the Subject Property through July 23, 2018.

35.     The HAP Contract was made orally with the terms described in paragraph 34 of this complaint after SFHA staff explained to Defendant all the terms contained the pages of the proposed HAP contract attached hereto as Exhibit B. Said HAP Contract was fraudulently breached as described in paragraph 34 of this complaint.

36.     Effective November 1, 2010, SFHA set its payment at $1,472 the amount of Relator's payment to $928 per month. On December 1, 2010, SFHA increased its payments to $1,940 and increased the amount of Relator's payment to $460 per month. On March 1, 2011, SFHA increased Relator's portion to $726 and decreased the subsidy to $1,674. On December 1, 2012, SFHA decreased Relator's portion to $226 and increased the subsidy to $2,174. On February 1, 2014, SFHA increased Relator's portion to $709 and decreased the subsidy to $1,691. On March 1, 2014, SFHA decreased Relator's portion to $109

and increased the subsidy to $2,291. On October 1, 2014, SFHA increased Relator's portion to $310 and decreased the subsidy to $2,090. On April 1, 2015, SFHA increased Relator's portion to $672 while the subsidy remained $2,090. On June 1, 2015, SFHA decreased Relator's portion to $310 while the subsidy remained $2,090. On March 1, 2016, SFHA increased Relator's portion to $1,262 and decreased the subsidy to $1,500. On April 1, 2016, SFHA increased Relator's portion to $1,318 and increased the subsidy to $1,725. On December 1, 2016, SFHA increased Relator's portion to $1,392 and increased the subsidy to $2,195. On April 1, 2017, SFHA decreased Relator's portion to $934 and increased the subsidy to $2,653. On May 1, 2018, SFHA decreased Relator's portion to $441 and increased the subsidy to $3,486.

37.     However, when RELATOR took occupancy of the Subject Premises, Defendant refused to pay for any of the utilities to the Subject Premises and required RELATOR to arrange for payment for electricity, gas and water services to the entire Subject Property.  Defendant never offered RELATOR any reimbursement for such costs.  From the beginning of RELATOR's tenancy through July 23, 2018, RELATOR was forced to pay for electricity, gas and water service to both units at the Subject Property and seek reimbursement for amounts spent on utilities used in the lower unit from the occupants thereof. Both RELATOR and the Housing Authority reminded Defendant several times that Defendant was required to put the electricity, gas and water accounts in Defendant name and refrain from charging Relator for electricity, gas and water use within the Subject Premises.

38.     On June 4, 2018, an inspector from the Housing Authority cited Defendant for RELATOR paying the utilities for a unit which was not separately metered.  On or about July 3, 2018, Sabrina Cheek, a housing inspector of the Housing Authority performed an inspection of the Subject Premises.  Shortly hereafter, the Housing Authority issued a Notice to Defendant citing Defendant for lack of functioning smoke detectors, cracked paint on ceiling, and damaged exterior stairs at the Subject Premises as well as "SINGLE FAMILY UNIT WITH AN IN-LAW ONLY 1 METER OWNER MUST HAVE UTILITIES IN THEIR NAME, OWNER MUST PROVIDE COPY OF ELECTRICITY, GAS AND WATER BILL AND TENANT MAY NOT PAY ANY PORTION OF UTILITES SF 7/3/2018 UTILITIES NOT TRANSFERRED TO OWNER'S NAME ABATE SF", indicating that the Housing Authority then

intended to abate payment of housing assistance due to the violation regarding payment of utilities. Shortly thereafter, the Housing Authority did abate housing assistance payments for one or two months, which finally convinced Defendant to comply with Section 8 regulations and the HAP Contract by putting the electricity, gas and water accounts for the Subject Property in Defendant's name.

39.     At various times throughout RELATOR's tenancy, the Subject Premises was not up to code due to habitability defects including but not limited to toxic biological contaminants, water leaks, dilapidated flooring, lack of hot water heater, and lack of functioning appliances.

40.     On June 23, 2014, Inspector Bragg of San Francisco Department of Building Inspection inspected the Subject Property and found water intrusion, toxic biological contaminants, damaged flooring and an illegal kitchen in the unit below the Subject Premises.  On June 27, 2014, Inspector Bragg mailed a Notice of Violation #201481052 to Defendant which ordered Defendant to abate those violations by July 28, 2014.  Because that was not done, a final warning letter was set by San Francisco Department of Building Inspections to Defendant on July 28, 2014.  Those violations were not abated until August 18, 2014 at which time Inspector Bragg inspected the Subject Premises and confirmed the violations had been abated.

41.     On May 13, 2015, Inspector Mak of San Francisco Department of Building Inspection inspected the Subject Property and found that there was no functioning hot water heater, damage to ceiling in water heater room, and there was toxic biological contaminants in the Subject Premises.  Inspector Mak sent Defendant Notice of Violation #201546931, for those violations the following day.  On June 18, 2015, Inspector Mak reinspected the Subject Property and found that the hot water heater had been replaced and the ceiling in the water heater room repaired but that the toxic biological contaminants violations he had cited still remained unabated.  On July 23, 2015, Inspector Mak reinspected the Subject Property and found that all of the violations he had cited had been abated.

42.     On June 24, 2015, Charles Akhinedor of SFHA sent Defendant a letter informing her that she needed to be paying the utilities because there was only one meter metering the utilities being used by the two dwellings at the Subject Property.  On July 13, 2015, Ms. Odiye replied with a letter which indicated that Mr. Akhinedor had spoken with her and answered her questions.  Ms. Odiye's July 13, 2015 letter

went on to state "…I will be paying for all the utilities…"  On September 15, 2015, Cydney Jones of SFHA sent Defendant a letter stating that she could not locate a HAP Contract in the file and enclosing a duplicate HAP Contract which the letter required Defendant to sign and return within one week.  On January 25, 2016, Mr. Akhinedor sent Defendant another letter stating that Defendant needed to sign a new HAP Contract and that "SFHA cannot enter into any agreement where the tenant is being made to be responsible for the entire utility bills in a shared meter situation, as you were previously notified."  That letter also offered Defendant a rent increase if she complied.  Although there is currently no signed HAP Contract in the file and Relator continued to pay the utilities through September 2018, Defendant represented compliance with Mr. Akhinedor's requests sufficient for SFHA to issue a rent increase in the precise amount offered by Mr. Akhinedor on condition that Defendant agree to put the utilities in her name. .That rent increase notice was issued on March 1, 2016 and stated that, "Effective April 1, 2016, it is noted that the landlord, Debbie Odiye is responsible for all utilities."  However, Defendant continued to force Relator to maintain the accounts for all utilities at the Subject Property in Relator's name through September 2018.

43.     Defendant submitted several fraudulent rent increase requests to SFHA during the course of the subject tenancy. The rent increase request which Defendant submitted to SFHA around September 18, 2014 represented that the Subject Premises is a single-family home, that garage parking, covered parking, and gardening services were included, and that the tenant was paying utilities.  There are SFHA internal processing notes on this request which indicate that SFHA was still under the impression that the building contained only one unit.  The request Defendant submitted to SFHA around March 24, 2016 represents that the Subject Premises is a single-family home, that garage parking and gardening services were included and that the tenant was paying utilities.  The request Defendant submitted to SFHA around April 4, 2017 represents that the Subject Premises is a single-family home, that garage parking and gardening services were included and that the tenant was paying utilities.

44.     From the beginning of RELATOR's tenancy through May, 2015, Defendant forced RELATOR to pay $100 per month for use of the parking space in the garage at the Subject Property.  Thereafter, Defendant informed Relator that she could no longer use that parking spot because Relator was not

paying Defendant the additional $100.  Defendant routinely stated in her rent increase application forms submitted to SFHA, that the parking space was included in the new increased rent for the Subject Premises Defendant was requesting.

45.     Throughout the subject tenancy, Defendant required Relator to maintain the yards at the Subject Property, threatening to evict Relator when she did not do so to Defendant's satisfaction.  However, Defendant routinely stated in her rent increase application forms submitted to SFHA, that gardening was included in the new increased rent for the Subject Premises Defendant was requesting.

46.     In September 2015, Defendant no longer provided RELATOR with a parking space and caused the backyard to be shared between RELATOR and other of Defendant's tenants at the Subject Property. Defendant have continued to deprive RELATOR of these two amenities despite written communications from RELATOR informing Defendant that Defendant is required to provide them under the Agreement and HAP Contract.

47.     Although RELATOR paid $2,500 security deposit stated in the October 2010 lease, in July 2017 and again on or about March 26, 2018 Defendant claimed that RELATOR paid only $2,000 and demanded RELATOR pay an additional $500 toward the security deposit.

48.     Defendant illegally entered the Subject Premises on multiple occasions without giving proper advance notice.

49.     Defendant's failure to maintain and repair the Premises was negligent and intended to cause RELATOR to vacate the Premises.

50.     Defendant's failure to pay the electricity, gas and water bills as Defendant promised the San Francisco Housing Authority was done with the intent to fraudulently enrich themselves.

51.     Defendant was at all times fully aware that they, acting as managers and operators at the property, had failed to maintain it to the standard of habitability as required by law.  In addition to the foregoing substandard and defective conditions, including water intrusion and resulting contaminants, Defendant was, at all times relevant, aware that the Subject Premises and its grounds lacked other necessary characteristics to be a habitable dwelling including but not limited to infestations toxic biological contaminants.

52.     Despite RELATOR's continued requests, the defective conditions went unabated throughout much of her tenancy.

53.     RELATOR did not cause or contribute to the substandard conditions described herein and had fulfilled her obligations as a tenant at all times.

54.     Defendant had actual and constructive knowledge of these conditions at the Subject Premises and failed to cure the conditions listed herein. RELATOR notified Defendant of the defective conditions with no effective response.

55.     Throughout her occupancy of the Subject Premises, RELATOR repeatedly notified Defendant and/or her agents, of the defective and dangerous conditions listed above, among others, and requested that Defendant have them repaired.  Despite these requests Defendants, and each of them, failed and/or refused to repair the conditions in a timely manner, and/or have done so in a negligent and/or unreasonable fashion and in bad faith.

56.     Defendant exhibited wanton and blatant disregard of these unsanitary and uninhabitable conditions, as most were manifestly visible to the untrained observer.

57.     Defendant did not perform her obligations under the Agreement in ways that include, but are not limited to the following:

     a.   Breaching the warranty of habitability by not making the needed repairs;

     b.   Failing to maintain the Subject Premises in a safe and habitable condition; and

     c.   Forcing RELATOR to pay for electricity, gas and water service which was used within the Subject Premises and refusing to put the electricity, gas and water account in her name.

58.     Defendant breach the HAP Contract and the Agreement by accepting side payments from Relator and reducing housing services which Defendant's promised to provide including, accepting money from Relator in addition to the rent approved by SFHA in exchange for use the garage parking, removing Relator's parking spot, ceasing to provide exclusive use of the backyard, and storing Defendant's possessions in areas rented to Relator.

59.     As a direct and proximate result of the above conduct and resultant conditions in the Premises, RELATOR has suffered and continues to suffer severe physical, mental, and emotional pain, injury and

distress, including, but not limited to, respiratory ailments, shortness of breath, wheezing, coughing, eye irritation, interrupted sleep, general discomfort and fatigue, embarrassment, humiliation, discomfort, exacerbation and annoyance, all to her general damage in an amount to be proven at trial.

60.    As a direct and proximate result of the above acts by Defendants, and each of them, RELATOR paid excessive rent and electricity, gas and water payments for the Subject Premises during the length of her tenancy.

61.    As a direct and proximate result of the above acts by Defendants, and each of them, Defendant fraudulently induced the Government to make excessive subsidy payments to Defendant.

62.    As a direct and proximate result of the above-mentioned conduct, RELATOR has suffered and continues to suffer damages, all in an amount to be proven.

63.    As a direct and proximate result of the above conduct, RELATOR has suffered and continues to suffer the loss of use of the Subject Premises, attorney fees, and other special damages.

64.    By way of RELATOR's long-term tenancy and regular monthly payment of rent, RELATOR was also a common law tenant of the Subject Premises.

65.    As a direct and proximate result of the above mentioned conduct, RELATOR has suffered damages, all in an amount to be proven.

66.    As a direct and proximate result of the above conduct, RELATOR has been forced to incur attorney's fees.

67.    As a direct and proximate result of the above acts by Defendants, and each of them, RELATOR paid excessive rent for the Subject Premises for over one year.

68.    By demanding and taking side payments from RELATOR, Defendant breached the HAP Contract and violated Department of Housing and Urban Development regulations and the Federal False Claims Act.

69.    Defendant engaged in the above-described conduct with the knowledge that the conduct was without right or justification and without regard for the fact that it would cause financial harm to RELATOR, notwithstanding their obligation to comply with applicable statutes, Department of Housing and Urban Development regulations, and Defendant's contract with the Housing Authority.  RELATOR

is therefore entitled to punitive damages.

## APPLICABLE FASLE CLAIMS ACT LAW

70.     The Federal False Claims Act provides, in pertinent part:

(a)(1) Any person who (A) knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval; (B) knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim; or (C) conspires to commit a violation of subparagraph (A), (B), is liable to the United States government for a civil penalty of not less than $5,500 nor more than $11,000, plus 3 times the amount of damages which the Government sustains as a result of the act of that person.

(b)  For purposes of this section, (1) the terms "knowing" and "knowingly", (A) mean that a person, with respect to information, (i) has actual knowledge of the information; (ii) acts in deliberate ignorance of the truth or falsity of the information; or (iii) acts in reckless disregard of the truth or falsity of the information; and (B) require no proof of specific intent to defraud.

71.     A landlord violates the Federal False Claims Act by demanding and receiving payments for housing services when such payments have not been approved by the Government. *Coleman v. Hernandez* 490 F.Supp.2d 278 (2007).

72.     Each time a payment was received in violation of the Federal False Claims Act is a separate violation of the Federal False Claims Act. *United States ex rel. Kreindler & Kreindler v. United Technologies Corp.,* 985 F.2d 1148, 1157 (2d Cir.1993).

## COUNT I
(VIOLATION OF 31 U.S.C. § 3729 et seq.)

73.     RELATOR re-alleges and incorporates herein the allegations of all preceding paragraphs as though fully set forth by this reference.

74.     Defendant received Federal funds from the Housing Authority as subsidies for RELATOR's rental payments pursuant to the Department of Housing and Urban Development's Section 8 Housing Voucher Program.

75.     Defendant endeavored to increase Defendant' profits from RELATOR's tenancy by refusing to pay for RELATOR's electricity, gas and water services and forcing RELATOR to pay for electricity, gas

and water services used at the Subject Property or by collecting housing assistance payments while refusing to demolish the second unit at the Subject Property. Defendant also endeavored to increase Defendant' profits from RELATOR's tenancy by not legalizing the Subject Premises prior to January 11, 2016, charging Relator for the garage parking space $100 in addition to the amount SFHA limited Defendant to collecting from Relator, removing RELATOR's parking space, requiring Relator to maintain the yards at the Subject Property, requiring RELATOR to share use of the back yard, demanding additional security deposit money, attempting to reduce the amount of Relator's security deposit held by Defendant, and storing Defendant's possessions in the Subject Premises. Defendant did so, knowing that Defendant had promised SFHA that Defendant would not do those things and would maintain and not intrude on all originally provided amenities and rented spaces, and not charge any further security deposit beyond that stipulated in the Agreement and HAP Contract as conditions for Defendant being eligible to receive subsidy payments from SFHA.

76.     As a prerequisite for receiving funds through the Section 8 Housing Voucher Program, Defendant was required to agree to provide amenities including the garage parking space, gardening services, exclusive access to the backyard without extracting any additional money or services from Relator beyond Relator's portion of the rent and Relator's security deposit as set by SFHA, certify that the Subject Premises was legal to rent under state law, and comply with the Department of Housing and Urban Development's regulations pertaining to the Section 8 Housing Voucher Program which required Defendant to pay Relator's utilities if those utilities were metered by a meter which metered utility usage in another dwelling unit.

77.     Defendant's promise that the Subject Premises was legal to rent, promise to pay for Relator's electricity, gas and water service or demolish the second unit at the Subject Property, and promise to refrain from removing RELATOR's parking space, charging Relator any amounts for housing services associated with Relator's use of the Subject Premises beyond Relator's portion of the rent as set by SFHA, requiring RELATOR to share use of the back yard, demanding additional security deposit money, and storing Defendant's possessions in the Subject Premises were material to the Housing Authority's decision pay Defendant the subsidy. RELATOR could not afford such bills and the Housing Authority

would not have subsidized the subject tenancy in amounts above the Housing Authority's payment standard.

78.     Defendant violated the Federal False Claims Act by submitting a false claim to the Federal Government when Defendant submitted fraudulent forms to SFHA and accepted housing assistance payments with knowledge that Defendant had promised that the Subject Premises was legal to rent, promised to cover the costs of RELATOR's utilities or demolish the second unit at the Subject Property, and promised to refrain from removing RELATOR's parking space, charging Relator any amounts for housing services associated with Relator's use of the Subject Premises beyond Relator's portion of the rent as set by SFHA, requiring RELATOR to share use of the back yard, demanding additional security deposit money, and storing Defendant's possessions in the Subject Premises. Defendant knew such claims to be false, because shortly after the claim was made, at the outset of RELATOR's tenancy, Defendant forced RELATOR to pay for RELATOR's electricity, gas and water service used at the Subject Property without demolishing the second dwelling unit at the Subject Property in violation of the HAP Contract and promises to SFHA upon which the HAP Contract was contingent, which provided that Defendant would only be able to evade paying RELATOR's electricity, gas and water costs if Defendant demolished the second unit at the Subject Premises. Each month for which the Subject Premises did not have certificate of occupancy and/or for which RELATOR was forced to pay electricity, gas and water costs while the second unit still existed at the Subject Premises, charged Relator money for use of the garage parking space beyond Relator's portion of the rent as set by SFHA, ceased to provide Relator exclusive use of originally provided amenities and rented spaces and/or charged additional security deposit money, in the manner herein alleged, was a separate violation of the Federal False Claims Act.

79.     Defendant, by knowingly endeavoring cause to be made or used false statements or records material to a false claim including, i.e., false certifications, requests for tenancy approvals, requests for rent increases, letters to SFHA staff or representations of compliance with the Department of Housing and Urban Development's regulations pertaining to the Section 8 Housing Voucher Program, which Defendant caused to be made when Defendant applied for Federal subsidy and entered into the HAP Contract and throughout the tenancy, violated 31 U.S.C § 3729(a)(1)(B) and 31 U.S.C § 3729(a)(1)(C).

80.     Defendant, through her concerted efforts to conspire to illegally exact excessive subsidy payments from the Government violated 31 U.S.C § 3729(a)(1)(A) and 31 U.S.C § 3729(a)(1)(C).

81.     In knowingly endeavoring to induce the Government to enter into the HAP Contract, Defendant did not inform the Government that the Subject Premises was not legal to rent, that RELATOR would be made responsible to pay her own utilities while the second unit at the Subject Property was not demolished, that Defendant would charge Relator amounts for housing services associated with Relator's use of the Subject Premises beyond Relator's portion of the rent as set by SFHA, or that amenities associated with the tenancy would be removed.  Through such acts, Defendant endeavored to fraudulently induce the Government to believe that the Subject Premises was legal to rent, that Defendant would pay for all electricity, gas and water services used by RELATOR or that Defendant would demolish the second unit at the Subject Property, that Defendant would not charge Relator amounts for housing services associated with Relator's use of the Subject Premises beyond Relator's portion of the rent as set by SFHA, and did cause the Government to so believe while Defendant knew that the same was not true and thereby violated 31 U.S.C § 3729(a)(1)(A), 31 U.S.C § 3729(a)(1)(B) and 31 U.S.C § 3729(a)(1)(C). ·

82.     Defendant continued to receive subsidy payments from the Government from the inception of RELATOR's tenancy through the present with the exception of one or two months in 2018 when the Housing Authority temporarily abated subsidies.

83.     All of the Defendant's conduct described in this Complaint was knowing, as that term is used in the Federal False Claims Act.

84.     By demanding that RELATOR pay for all electricity, gas and water usage at the PROPERTY when Defendant promised Housing Authority that RELATOR would not have to pay for electricity, gas and water usage or that the second unit at the Subject Property would be demolished and by charging Relator money for the garage parking spot beyond Relator's portion of the rent as set by SFHA, Defendant accepted "side payments" from RELATOR, breached obligations to comply with applicable statutes, Department of Housing and Urban Development regulations, and the HAP Contract.

85.     As a direct and proximate result of the above mentioned conduct, RELATOR paid excessive

electricity, gas and water costs and rent and the Government was damaged in the full amount of every subsidy payment made to Defendant as Defendant was in breach of the HAP Contract at all times during the subject tenancy.

## COUNT II
### (Fraud/Concealment)

86.     RELATOR re-alleges and incorporates herein the allegations of all preceding paragraphs as though fully set forth by this reference.

87.     RELATOR was a third-party beneficiary of the HAP Contract between Defendant and the Housing Authority.

88.     In knowingly inducing RELATOR and the Government to enter into the Agreement and the HAP Contract, Defendant represented to the Government and RELATOR that the Subject Premises was legal to rent and that Relator would have a parking spot in the garage and exclusive use of the backyard and the interior of the Subject Premises.  At no time did Defendant disclose the fact that the Subject Premises was not legal, that the Subject Property had been illegally subdivided into two dwelling units without permits, that no certificate of occupancy had thereafter been issued to legalize the Subject Property as containing two dwelling units or that Defendant planned to convey Relator's parking spot to the residents of the second unit at the Subject Property, cause the backyard to be shared with other tenants, nor that Defendant would store her belongings in the Subject Premises.  By impliedly representing that the Subject Premises was a legal dwelling and that RELATOR would have a parking space in the garage and exclusive use of the back yard and all spaces within the Subject Premises, Defendant intended to cause RELATOR and the Government to believe those representations and did cause RELATOR and the Government to so believe, which induced Relator to agree to rent the Subject Premises.

89.     Defendants knew that, at all times relevant until January 11, 2016, the Subject Premises was an Illegal Unit.

90.     In renting the Subject Premises to Relator, Defendant concealed certain material facts. Such concealments included but were not limited to failure to disclose: that the Subject Premises was an Illegal Unit and that Defendant did not have the legal right to collect rent for the Subject Premises.  Defendant had no reasonable grounds for

believing these facts were not true or that such facts should not have been disclosed to prospective tenants considering whether or not to enter into a rental agreement for the Subject Premises.

91.     Defendant made the concealments with the intent to induce Relator's reliance on her belief that the Subject Premises was not an Illegal Unit and that it was legal for Defendant to collect rent for residential use of the Subject Premises. Such beliefs on the part of Relator were reasonably caused by Defendant's acts because she did not know the facts concealed by Defendant. Defendant intentionally concealed the fact that such beliefs were not true and that the Subject Premises was an Illegal Unit because Defendant wanted Relator to rent the Subject Premises and wanted to illegally collect rent for the Subject Premises. Relator was ignorant of the truth and was justified in her reliance on each Defendant's concealments in forming those beliefs.

92.     Had Defendant disclosed Relator that the Subject Premises was an Illegal Unit, she would not have signed the Agreement or rented or occupied the Subject Premises or would not have rented the Subject Premises at the amount Relator did rent it for.

93.     As a direct and proximate result of the misrepresentations and concealments, Relator suffered damages including but not limited to all rent Relator paid for the Subject Premises. Defendant's concealment was a substantial factor in causing such harm.

94.     Relator is informed and believe and thereon allege that each Defendant's conduct, as described above, was done with oppression, fraud, and malice as defined in Civil Code section 3294 and Relator should recover, in addition to actual damages, punitive damages to make an example of and to punish Defendant.

## COUNT III
### (Breach of Covenant of Quiet Enjoyment)

95.     RELATOR re-alleges and incorporates herein the allegations of all preceding paragraphs above as though fully set forth by this reference.

96.     RELATOR, by virtue of her rental of the Subject Premises and the Agreement, RELATOR had at all relevant times, a property interest in the Subject Premises. Defendant's conduct in fraudulently forcing RELATOR to pay for utilities, failing to make repairs which Defendant knew compromised the habitability of the Subject Premises, removing amenities or forcing RELATOR to share them with other tenants, and Defendant's illegal intrusions and visits into the Subject Premises interfered with RELATOR's quiet enjoyment of the Subject Premises.

97.     By the acts and omissions described above, Defendant interfered with, interrupted, and deprived RELATOR of the full and beneficial use of the Subject Premises and disturbed RELATOR's peaceful possession of the Subject Premises.

98.     These acts of interference, interruption, deprivation, and disturbance by Defendant amount to a breach of the covenant of quiet enjoyment implied in all rental agreements, and codified in California Civil Code section 1927.

99.     As a direct and proximate result thereof, RELATOR has suffered, and continue to suffer, pain, discomfort, annoyance, inconvenience, anxiety, economic loss, loss of use of the Subject Premises, and mental anguish, all to her detriment in amounts to be determined at trial.

### COUNT IV
### (Unlawful Business Practices)

100.    RELATOR re-alleges and incorporates herein the allegations of all preceding paragraphs as though fully set forth by this reference.

101.    RELATOR brings this cause of action under Business and Professions Code § 17200 et seq. as a private person affected by the acts described in this Complaint.

102.    RELATOR, in bringing this action, is suing as an individual, and on behalf of the public at large.

103.    At all times relevant herein, Defendant and each of them were conducting a business under the laws of the State of California.  In conducting said business, Defendant was obligated to comply with applicable California and local laws.

104.    By failing to comply with State and local law and common law obligations relating to lessors of residential premises, as alleged herein, all of which resulted in the unlawful charges to RELATOR and fraud against RELATOR and the Government as heretofore alleged, Defendant have acted in contradiction to the law and are engaged in unfair and unlawful business practices.

105.    California Business and Professions Code section 17200 *et seq.*, prohibits unfair competition in the form of any unlawful, unfair, deceptive or fraudulent business practice.

106.    RELATOR is informed and believes and thereupon allege that the acts of Defendant as described herein, constitute an unlawful business practice and unfair competition in violation of California Business and Professions Code, Sections 17200 *et seq.*

107.    RELATOR is informed and believes and thereupon alleges that Defendants, as a pattern and practice engage in such unlawful business practice as aforementioned, directly having effect upon other members of the public to whom Defendant have legal obligations.

108.    RELATOR is informed and believes and thereupon allege that Defendant have been unjustly enriched by their violations of their legal obligations as landlords and lessors of residential property and related provisions of the Business and Professions Code, which thereby justifies the award of restitution in an amount to be proven at trial, including but not limited to attorney fees and injunctive relief, enjoining Defendant from future unlawful or unfair business practice.

## COUNT V
### (Common Count)

109.    RELATOR re-alleges and incorporates all prior allegations as though fully set forth herein.

110.    Defendant received money, rent and the side payments, that was intended to be used for the benefit of Relator.

111.    Such money was not used for the benefit of Relator.

112.    Defendant have not returned any portion of such money to Relator or the United States.

113.    As a result, Relator is entitled to restitution of all side payments from Defendant in an amount to be proven at trial.

## COUNT VI
### (Intentional Infliction of Emotional Distress)

114.    RELATOR re-alleges and incorporates all prior allegations as though fully set forth herein.

115.    The acts of Defendants, as heretofore alleged were extreme and outrageous and done with conscious disregard for the rights of RELATOR.  Defendant knew that RELATOR was susceptible to additional discomfort as a result of the conduct described, knew that the conduct adversely affected RELATOR and her family, had the wherewithal to avoid the conduct, yet consciously failed and refused to do so.

116.    As a direct and proximate result of Defendant's conduct, RELATOR has suffered, and continues to suffer, severe mental, emotional, and physical distress, pain, and suffering, all to RELATOR's general damage, in an amount to be proven at trial.  RELATOR is entitled to punitive damages due to the oppressiveness and maliciousness of Defendant's acts and the fact the Defendant knew that such acts would have severe health and safety impacts on RELATOR and her family.

## COUNT VII
### (Negligence)

117.    RELATOR re-alleges and incorporates all prior allegations as though fully set forth herein.

118.    By reason of the landlord-tenant relationship between Defendant and RELATOR, Defendants, and their agents, owed RELATOR a duty to exercise reasonable care in the ownership, management, inspection, and control of the Subject Property, which included a statutory duty to comply with all applicable laws governing RELATOR's rights as a tenant and all duties listed below.  Defendant also owed a duty to exercise reasonable care in maintaining the Subject Property and Subject Premises free of defects and/or hazards and in inspecting the Subject Property and Subject Premises for same, so as to preclude any persons, including RELATOR and her family, from unreasonable risk of harm.  Defendant also owed a duty to warn RELATOR of any potential and non-obvious hazards.

119.    The duty to exercise reasonable care owed by Defendants, and each of them, to RELATOR also included, but was not limited to the following duties:  the duty to provide RELATOR with legal, tenantable housing, fit for human occupancy; the duty to refrain from interfering with RELATOR's full use and quiet enjoyment of the rented residence; and the duty to comply with all applicable laws governing RELATOR's rights as a tenant.

120.    Defendants, by the acts and omissions alleged herein, were negligent and careless and thereby breached said duties.  Defendant also breached their duties to RELATOR by failing to inspect the Subject Property and Premises, to repair the Subject Property and Subject Premises properly, to maintain the Subject Property and Subject Premises free of defects and hazards, and to cover the costs of electricity, gas and water and garbage services necessitated by the occupancy of RELATOR and her family at the Subject Premises.

121.    As a direct and proximate result of these breaches of duty by Defendants, RELATOR suffered

1    actual and special damages as herein alleged.

2    122.    The aforementioned duties breached by Defendant was breached with knowing and/or reckless

3    disregard for RELATOR's rights and/or safety and/or health and therefore justify an award of substantial

4    exemplary and punitive damages in an amount to be proven at trial.

5                                        **COUNT VIII**
6                                        **(Nuisance)**

7    123.    RELATOR re-alleges and incorporates all prior allegations as though fully set forth herein.

8    124.    RELATOR, by virtue of her rental of the Subject Premises and the Agreement, had at all

9    relevant times, a property interest in the Subject Premises.  Defendant's conduct in creating and

10   maintaining a nuisance in the manner described herein, was injurious to RELATOR's health, offensive

11   to RELATOR's senses, and interfered with her comfortable enjoyment of life, personal property, and

12   her interest in the Subject Premises.

13   125.    Defendant created and maintained the deficient conditions in the Subject Property by failing to

14   correct or repair defective conditions.  Defendant's conduct in maintaining the Subject Premises and

15   Subject Property in a hazardous, unhealthy and offensive state was grossly negligent and Defendant

16   should have known that regular upkeep would be required to maintain the habitability of the Subject

17   Premises.

18   126.    Defendant also committed nuisance intentionally by retaking RELATOR's parking space, causing

19   the back yard to be shared with other tenants, and storing Defendant's belongings infested with noxious

20   biological contaminants in spaces within the Subject Premises.

21   127.    As a direct, legal and foreseeable result of the conduct of Defendants, as set forth above,

22   RELATOR suffered special and general damages as set forth herein.

23   128.    The Defendant's conduct, as set forth herein, was grossly negligent and through reasonable and

24   necessary inspections it would have been readily apparent that the injury, discomfort, and annoyance

25   would unavoidably result to RELATOR.  Defendant therefore acted with willful and conscious

26   disregard for the rights and safety of RELATOR.  Defendant's conduct was also oppressive and

27   despicable, and said conduct constituted a cruel and unjust hardship upon RELATOR.  Therefore,

28   RELATOR request substantial punitive damages to be proven at trial.

1

2

## COUNT IX
### (Breach of the Implied Warranty of Habitability)

129.   RELATOR re-alleges and incorporates all prior allegations as though fully set forth herein.

130.   At all relevant times herein, numerous defective living conditions have existed, and continue to exist, at the Subject Property.  These defective conditions include, but are not limited to lack of electricity, gas and water and garbage service to the unit and the above mentioned physical defects cited by Housing Authority inspectors and the San Francisco Department of Building Inspection.

131.   The defective conditions stated above constitute violations of state and local housing laws and pose severe health, safety and fire hazards.  The defective conditions materially affected RELATOR's living conditions.  State and local agencies, including but not limited to the Housing Authority and San Francisco Department of Building Inspection, have cited the Defendant for unsafe conditions and code violations as described above.

132.   Defendant had actual and constructive notice of each of the defective conditions described herein at all times relevant to this Complaint.  Despite such notice, Defendant failed to take the steps necessary to repair said conditions at all times relevant to this Complaint.

133.   RELATOR paid Defendant monthly rent during the time RELATOR occupied the Premises. Defendant also received subsidy payments during the time RELATOR occupied the Premises.

134.   RELATOR did nothing to cause, create or contribute to the existence of the defective conditions.

135.   By Defendant's breach of the warranty of habitability, Defendant breached a duty imposed on all residential landlords by state and local law and Department of Housing and Urban Development regulations.  In failing to repair the defective conditions detailed above, Defendant acted unreasonably.

136.   As a direct and proximate result of Defendant's breach, the RELATOR has suffered, and continues to suffer pain, anxiety, annoyance, inconvenience, distress, economic loss, loss of use and property damage, all to her detriment in amounts to be determined at trial.

137.   The conduct of Defendant's alleged above was deliberate, willful and malicious. Defendant acted, or failed to act, deliberately and in conscious disregard of the rights and safety of the

1  RELATOR. By reason thereof, RELATOR is entitled to punitive damages in an amount to be

2  determined at trial.

3  
### COUNT X
4  ### (Violation of Civil Code § 1940.9)

5  138.   RELATOR re-alleges and incorporates all prior allegations as though fully set forth herein.

6  139.   Defendant did not provide RELATOR with her own electricity, gas and water meter such that her

7  meter measured only the electricity, water and gas service to RELATOR's dwelling unit. Defendant or

8  her agent had knowledge that gas or electric service provided through RELATOR's meter served an area

9  outside RELATOR's dwelling unit. However, neither Defendant, nor her agents disclosed that condition.

10  At no time did Defendant attempt to make any arrangements for reimbursement to RELATOR for

11  RELATOR's excessive electricity, gas and water payments nor assignment of the electricity, gas and

12  water account to Defendant. Instead, at all times relevant to this Complaint, Defendant insisted that

13  RELATOR pay all electricity, gas and water bills for service to the Subject Property. RELATOR was

14  able to obtain some reimbursement for some electricity, gas and water charges from the occupants of the

15  other unit at the Subject Property.

16  140.   As a result, RELATOR suffered financial harm in the amount of all unreimbursed electricity, gas

17  and water charges she paid for which she was not reimbursed by the occupants of the other unit at the

18  Subject Property.

19  
### COUNT XI
20  ### (Breach of Contract)

21  141.   RELATOR re-alleges and incorporates all prior allegations above as though fully set forth

22  herein.

23  142.   RELATOR was a third party beneficiary of the HAP Contract between Defendant and the

24  Housing Authority.

25  143.   The Agreement and HAP Contract provided that Defendant would pay for the utilities which

26  RELATOR and her family used.

27  

28  

COMPLAINT FOR VIOLATION OF 31 U.S.C. § 3729, OTHER CAUSES AND JURY DEMAND
Page 26 of 28

144.    Defendant breached the Agreement and HAP Contract by forcing RELATOR to pay for all the electricity, gas and water services to the Subject Property, even those services provided to another tenant.

145.    Defendant breached the Agreement and HAP Contract by failing to make needed repairs.

146.    As a result of the herein stated breaches of the rental Agreement and HAP Contract, RELATOR has suffered financial damages in an amount to be proven at trial.

**COUNT XII**
**(Harassment - Violation of San Francisco Administrative Code § 37.10B)**

147.    RELATOR re-alleges and incorporates all prior allegations as though fully set forth herein.

148.    The acts described above constitute unlawful harassment under San Francisco Administrative Code § 37.10B (hereinafter the "Tenant Harassment Ordinance") as Defendant, in bad faith, refused to perform her duties and obligations.  Defendant's bad faith conduct included, but was not limited to causing Relator to incur utility bills and parking fees; failure to perform repairs in a timely and competent manner; removing housing services including but not limited to the garage parking; misrepresenting the terms of the tenancy to SFHA; forcing Relator to perform gardening services under threat of eviction; and misrepresenting the amount Relator had paid for security deposit and attempting to extract additional security deposit funds from Relator.

133.    As a direct, proximate, and foreseeable result of Defendant's actions, Relator suffered general and special damages in an amount to be determined at trial, but in no event less than the jurisdictional limits of this Court, and trebled pursuant to San Francisco's Tenant Harassment Ordinance and attorney's fees. Defendants' repeated harassment of RELATOR, as detailed herein, was so outrageous that Defendants acted in knowing violation or reckless disregard of San Francisco's Tenant Harassment Ordinance and therefore RELATOR is entitled to trebled damages for mental and emotional distress.

**WHEREFORE**, RELATOR prays for judgment as follows:

1. Judgment against Defendant for three times the amount of damages Relator and the United States have sustained as a result of Defendant's actions, plus a civil penalty of $11,000 for each violation of the Federal False Claims Act.
2. 25% of the proceeds of this action if the United States elects to intervene and 30% if it does not.

3. Three times any utilities or parking fees RELATOR was forced to pay.
4. General damages of $1,000,000 or according to proof.
5. Special damages of $1,000,000 or according to proof.
6. Her attorney's fees, costs and expenses.
7. Punitive and statutory damages.
8. Such other relief as the Court deems just and appropriate.

Respectfully Submitted,



Dated: December 19, 2019

_____

Jason Hain Esq.
Attorney for RELATOR,
KARLA ABEA

COMPLAINT FOR VIOLATION OF 31 U.S.C. § 3729, OTHER CAUSES AND JURY DEMAND
Page 28 of 28

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing complaint for violations of the Federal False Claims Act and all documentation of the facts underlying the allegations of said complaint has been served upon the following on the date and in the manner listed below:

### VIA FEDERAL EXPRESS

Hon. William Barr
950 Pennsylvania Avenue, NW
Washington, DC 20530

### VIA HAND DELIVERY

David L. Anderson
United States Attorney
450 Golden Gate Avenue
San Francisco, CA 94102

Dated: December 19, 2019          By: _____

Jason Hain Esq.
LAW OFFICES OF JASON HAIN
100 Pine St., Suite 1250
San Francisco, CA 94111
Attorneys for RELATOR
KARLA ABEA